IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RICHARD EVANS, derivatively on behalf of UNITED DEVELOPMENT FUNDING IV,<br><br>   Plaintiff,<br><br>-against-<br><br>HOLLIS M. GREENLAW, *et al.*,<br><br>   Defendants,<br><br>-and-<br><br>UNITED DEVELOPMENT FUNDING IV,<br><br>   Nominal Defendant. | Case No. 3:16-cv-0635-M |
| ADAM BAXTER and DAVID OSTLUND, derivatively on behalf of UNITED DEVELOPMENT FUNDING IV,<br><br>   Plaintiffs,<br><br>-against-<br><br>HOLLIS M. GREENLAW, *et al.*,<br><br>   Defendants,<br><br>-and-<br><br>UNITED DEVELOPMENT FUNDING IV,<br><br>   Nominal Defendant. | Case No. 3:17-cv-2433-M |

**<u>ORDER</u>**

Before the Court are Plaintiff Evans' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (ECF No. 56 in Case No. 3:16-cv-0635), and Plaintiffs Baxter and Ostlund's Motion for Attorneys' Fees, Reimbursement of Expenses and Payment of a Service Award (ECF No. 71 in Case No. 3:16-cv-0635 and ECF No. 23 in Case No. 3:17-cv-2433). For

the following reasons, Plaintiff Evans' Motion is GRANTED, and Plaintiffs Baxter and Ostlund's Motion is DENIED.

**I.      Background**

Shareholders of United Development Funding IV ("UDF IV") brought two derivative actions on behalf of UDF IV against UDF IV's officers, its directors, other interested parties, and various entities that were involved in UDF IV's alleged fraudulent Ponzi scheme. Plaintiff Evans' case is captioned *Evans v. Greenlaw et al.*, 3:16-cv-00635-M, and Plaintiffs Baxter and Ostlund's case is captioned *Baxter et al v. Greenlaw et al.*, 3:17-cv-02433-M. On December 21, 2017, the parties in *Evans* entered into a Stipulation of Settlement. (*See* ECF No. 53). The Stipulation provides that,

> [C]ertain of the Individual Defendants will cause one million five hundred thousand dollars ($1,500,000) to be paid under the applicable policy of insurance to be deposited into an escrow account for purposes of effecting the settlement contemplated by this Stipulation (the 'Settlement Fund'). A portion of the Settlement Fund shall be used to pay any attorneys' fees awarded to Plaintiff (including, if any, any incentive award), implement the corporate governance measures set forth herein and/or for other corporate purposes including the payment or partial payment of any award, judgment or settlement in connection with the UDF Class Action Litigation.
>
> [ . . . ]
>
> Plaintiff's counsel shall apply to the Court for an award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund. Defendants shall not oppose Plaintiff's application for such fee and expense award provided that Plaintiff does not seek an amount in excess of six hundred fifty thousand dollars ($650,000).

(ECF No. 53 ¶¶ 1.1, 3.1). No one objected to the *Evans* settlement. (ECF No. 57 ¶ 19; ECF No. 68 at 5). On May 14, 2018, the Court entered an Order granting final approval of the *Evans* settlement, and granting Plaintiff Evans' request for an incentive award of $2,500. (ECF No. 68). The Court deferred its determination of attorneys' fees until the Court approved UDF IV's class action settlement in *Hay v. Greenlaw, et al.*, No. 4:16-cv-00188-M, and *In re United*

*Development Funding IV Securities Litigation*, No. 3:15-cv-04030-M.  (*Id.* at 11).  On February 21, 2019, the Court entered an Order approving the class action settlement.

Evans' counsel request $650,000 in attorneys' fees.  (ECF No. 56 at 2–3; ECF No. 75 at 6).  Baxter and Ostlund's counsel do not dispute the total amount of fees sought by Evans' counsel.  (ECF No. 66 at 11:20–12:6).  Instead, Baxter and Ostlund's counsel argue that they should receive a portion of the award based on the contributions they made toward the *Evans* settlement.  (ECF No. 72 at 10–17).

## II. Legal Standard

Because this derivative action is a diversity case, the determination of the fee award is governed by state law.  *See Schilling v. Belcher*, 582 F.2d 995, 1003 (5th Cir. 1978).  In Maryland—where UDF IV is organized—attorneys' fees may be recovered in a successful derivative action under the "common fund" doctrine.  *See Boland v. Boland*, 31 A.3d 529, 542 (Md. 2011) (citing *Hess Const. Co. v. Bd. of Educ. of Prince George's Cty.*, 669 A.2d 1352, 1358 (Md. 1996) (observing that the common fund theory, allowing reasonable recovery of fees for a successful plaintiff, is allowed "where a stockholder's derivative action benefitted all of the shareholders").  The application of the common fund doctrine in an individual case lies "within the discretion of the trial judge."  *Bontempo v. Lare*, 217 Md. App. 81, 135 (Md. App. 2014), *aff'd*, 444 Md. 344 (Md. 2015).

Attorneys' fees awarded under the common fund doctrine may be calculated using a percentage method, the lodestar method, or a combination of both.  *Garcia v. Foulger Pratt Dev., Inc.*, 845 A.2d 16, 34 (Md. Ct. Spec. App. 2003).  Evans' counsel and Baxter and Ostlund's counsel both assert that the lodestar method is appropriate.  The Court agrees.  *See Whitaker v. Navy Fed. Credit Union*, 09CV2288, 2010 WL 3928616, at *5 (D. Md. Oct. 4, 2010)

(determining that lodestar analysis was appropriate where "the members are not actually receiving a monetary payment").

Under the lodestar method, a court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate. *Xiao–Yue Gu v. Hughes STX Corp.*, 127 F.Supp.2d 751, 764 (D. Md. 2001); *Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 416 Md. 325, 333 (Md. 2010).  In assessing the reasonableness of the hours and rate claimed, Maryland courts consider the following twelve factors elucidated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978): (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases.  *Id.*

### III.   Analysis

**A.   Evans' Counsel's Requested Attorneys' Fees are Reasonable Under the *Johnson* Factors.**

Evans' counsel provide evidence that they worked a total of 342.05 hours for a lodestar amount of $212,294.  (ECF Nos. 75-2 at 2, 75-3 at 1).  Evans' counsel request a multiplier of slightly more than 3x for a total of $650,000 in fees.

#### 1.   Factor 1: Time and Labor Required

Evans' counsel spent the majority of their 342.05 hours of time (1) interviewing Timothy McCormick, independent counsel for the Audit Committee of UDF IV; (2) reviewing 170,000

pages of UDF IV documents; and (3) mediating and negotiating the *Evans* settlement. (*See* ECF No. 75 at 3) (stating that Evans' counsel spent 27% of their time engaging in fact discovery, 20% of their time conducting legal research, and 15% of their time negotiating the *Evans* settlement). Evans' counsel's billing records show that when this case was stayed between May 18, 2016, and September 22, 2017, negotiations with Defendants continued. (ECF No. 75-2 at 4–5). The Court concludes that this case required significant time and labor and that this supports a finding that the requested fees are reasonable.

      2. **Factor 2: The Novelty and Difficulty of the Issues**

Shareholder derivative cases are notoriously complex to litigate. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'"). This case was especially complex because of the complicated relationships between UDF IV and its related-entities. The Court finds that the issues presented in *Evans* are complex and required a high level of legal skill. This support a finding that the requested fees are reasonable.

      3. **Factors Three and Nine: The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys**

Evans' counsel have a high level of skill and expertise with respect to shareholder derivative suits. (*See* ECF No. 75 at 4). Further, the standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by Evans' counsel and "confirms the superior quality of their representation." *Schwartz v. TXU Corp.*, No. 3:02-cv-2243-K, 2015 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005). Defendants were represented by highly-qualified lawyers and negotiations with them required skill and expertise. (ECF No. 75 at 4–5). The Court finds that factors three and nine support approval of the requested fee.

### 4. Factor Four: The Preclusion of Other Employment

The Court finds that Evans' counsel's 342.05 hours of work inevitably precluded other representations and that this weighs in favor of approval. *See Burford v. Cargill, Inc*., CIV.A. 05-0283, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012) ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter. . . . This factor weighs in favor of a substantial fee award.").

### 5. Factors Five and Twelve: The Customary Fee for Similar Work in the Community and Awards in Similar Cases

With a lodestar of $212,294, and a requested attorneys' fee award of $650,000, the requested fee is 3.06 times greater than the lodestar amount. Evans' counsel direct the Court to other common fund securities cases where the fees awarded were similar multipliers of the lodestar amount. *See In re Enron Corp. Securities, Derivative & ERISA Litig*., 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008) (noting that "the Ninth Circuit performed a survey of multipliers and found 'a range of 0.6–19.6, with most (20 of 24, or 83%) from 1.0 to 4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0 range'") (quoting *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1051 n.6 (9th Cir. 2002)); *OneBeacon Ins. Co. v. T. Wade Welch & Assoc*s., No. H-11-3061, 2015 U.S. Dist. LEXIS 111500, at *37 (S.D. Tex. Aug. 24, 2015) (awarding 3.0x multiplier in insurance coverage action); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 U.S. Dist. LEXIS 26053, at *22 (W.D. La. Feb. 11, 2015) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."). Based on these cases, and the Court's observation of other, similar cases, the Court finds that the requested fee is within the range of normal fee awards in actions of this type.

### 6.     Factor Six: Whether the Fee is Fixed or Contingent

Here, the requested fee is contingent.  Courts have recognized that a court should consider the risk inherent in taking a case on contingency in determining whether the amount of fees is appropriate.  *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859–60 (E.D. La. 2007) ("Recognizing the 'contingent risk of nonpayment' in [class action] cases, courts have found that class counsel ought to be compensated . . . for risk of loss or nonpayment assumed by carrying through with the case.").  The Court finds that the risk assumed by Evans' counsel in performing their work on contingency weighs in favor of approving the requested fees.

### 7.     Factor Seven: Time Limitations Imposed by the Client or the Circumstances

Evans' counsel argue that the fact that they filed the Evans Complaint soon after the FBI's raid on UDF IV's corporate headquarters demonstrates Evans' counsel's "commitment to the case."  (ECF No. 75 at 6).  Because Evans' counsel were not required to file the Complaint immediately after the raid, the Court finds that this factor weighs neither in favor nor against the requested fee award.

### 8.     Factor Eight: The Amount Involved and the Results Obtained

The Fifth Circuit has called this factor the "most critical" factor.  *See Migis v. Pearle Vision*, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998).  Evans' counsel explain that discovery produced evidence suggesting that a report written by Hayman Capital Management, L.P. that accused UDF IV of operating a Ponzi-like scheme and over-leveraging itself to certain borrowers, among other things, was not entirely accurate.  (ECF No. 75 at 7).  Evans' counsel states that UDF IV continues to deny any wrongdoing and is pursuing Hayman Capital for defamation.  Despite this question of Defendants' liability, Evans' counsel were still able to secure the *Evans* settlement.  The *Evans* settlement also provides UDF IV with $1.5 million from

its liability insurer to be used for corporate governance reform, related settlements, and attorneys' fees. The Court finds that this factor supports approval of the requested fee.

### 9. Factor Ten: The Undesirability of the Case

Evans' counsel concede that this case was "not especially desirable or undesirable." (ECF No. 75 at 8). The Court finds that this factor weighs neither in favor nor against the requested fee award.

### 10. Factor Eleven: Nature and Length of the Professional Relationship with Clients

Given that Evans' counsel do not have a long-term relationship, outside of this action, with their client, this factor does not weigh strongly for or against awarding the requested fees.

For the reasons stated above, all of the applicable *Johnson* factors are neutral or weigh in favor of awarding the requested fees, and the Court thus approves the requested fees of Evans' counsel.

### B. Allocation of Attorneys' Fees to Baxter and Ostlund's Counsel

Baxter and Ostlund's counsel claim that they deserve a portion of the fee award because they contributed to the *Evans* settlement. Baxter and Ostlund's counsel argue that "the Court should award the firms' respective out-of-pocket expenses off the top of the settlement, and then allocate the remaining attorneys' fees award among counsel based on the firms' respective lodestar amounts." (ECF No. 72 at 22).

Based on the pleadings and argument at the hearing on February 15, 2019, the Court finds that Baxter and Ostlund's counsel's alleged contributions did not confer a benefit on UDF IV or its shareholders, other than Baxter and Ostlund. *See Boland*, 31 A.3d at 542 (allowing for reasonable attorneys' fees "where a stockholder's derivative action benefitted all of the shareholders") (internal citation omitted). The Court is not persuaded that Evans did not have standing and that the settlement achieved would not have been obtained without Baxter and

Ostlund's separate suit. Therefore, Baxter and Ostlund's counsel are not entitled to any portion of the fee award of $650,000. For the same reasons, the Court denies Plaintiffs Baxter and Ostlund's requests for incentive awards.

Accordingly,

IT IS ORDERED that Plaintiff Evans' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (ECF No. 56 in Case No. 3:16-cv-0635) is GRANTED, and Plaintiffs Baxter and Ostlund's Motion for Attorneys' Fees, Reimbursement of Expenses and Payment of a Service Award (ECF No. 71 in Case No. 3:16-cv-0635 and ECF No. 23 in Case No. 3:17-cv-2433) is DENIED.

**SO ORDERED**.

February 27, 2019.

_____
BARBARA M. G. LYNN
CHIEF JUDGE